UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISOM TEAGUE,<br><br>              Plaintiff,<br><br>       v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>              Defendant. | Case No. CV 09-8848 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## **INTRODUCTION AND SUMMARY**

On December 4, 2009, plaintiff Isom Teague ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant" or "Commissioner"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 4.]

On March 1, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 11, 12, 13.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 16.] Both Plaintiff and Defendant subsequently consented to proceed for all purposes before the Magistrate Judge

pursuant to 28 U.S.C. § 636(c). [Docket Nos. 17, 22.]

Pursuant to a December 4, 2009 order regarding further proceedings, Plaintiff submitted a brief in support of his complaint ("Plaintiff's Brief") on May 4, 2010. [Docket No. 18.] On June 3, 2010, Defendant submitted his opposition brief ("Defendant's Brief"). [Docket No. 26.] The Court deems the matter suitable for adjudication without oral argument.

In sum, having carefully studied, *inter alia*, the parties' written submissions and the administrative record, the Court concludes that, as detailed below, any error the Administrative Law Judge ("ALJ") made in overlooking to list Plaintiff's prostatitis as severe at step two was harmless. Thus, the Court affirms the Commissioner's decision denying benefits.

## II.

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff has a high school education and was 43 years old on the date of his administrative hearing. (*See* Administrative Record ("AR") at 57, 329, 333.) His past relevant work includes employment as a security guard and as a chief guard. (*Id.* at 34, 340.)

On December 6, 2006, Plaintiff filed for DIB and SSI, alleging that he has been disabled since January 29, 2004 due to impairments in his lower back and testicles and numbness in both of his legs. (*See* AR at 162, 164, 178.) Plaintiff's applications, which were designated as "prototype" cases,[1] were denied on March 29, 2007, after which he filed a timely request for a hearing. (*Id.* at 162, 164, 169.)

On February 4, 2008, Plaintiff, proceeding *pro se*, appeared and testified at a hearing before an ALJ. (*See* AR at 329-43.) Sandra Trost, a vocational expert

---

[1] A "prototype case" designates a single decision maker to make the initial determination and eliminates the reconsideration step in the administrative review process. 20 C.F.R. §§ 404.906(a) & 416.1406(a).

1 ("VE"), also testified. (*See id.*)

2 On March 5, 2008, the ALJ denied Plaintiff's request for benefits. (AR at 29-
3 35.) Applying the five-step sequential evaluation process – which is discussed
4 below – the ALJ found, at step one, that Plaintiff has not engaged in substantial
5 gainful activity since his alleged onset date of disability. (*Id.* at 31.) At step two,
6 the ALJ found that Plaintiff suffers from a severe impairment consisting of a back
7 disorder. (*Id.*)

8 At step three, the ALJ determined that the evidence does not demonstrate that
9 Plaintiff's impairment, either individually or in combination, meet or medically
10 equal the severity of any listing set forth in the Social Security regulations.[2] (AR at
11 32.)

12 The ALJ then assessed Plaintiff's residual functional capacity[3] ("RFC") and
13 determined that he can perform light work. (AR at 32.) Specifically, the ALJ found
14 that Plaintiff "is capable of lifting and carrying 20 pounds occasionally and 10
15 pounds frequently and can sit, stand and walk for 6 hours out of an 8 hour day. He
16 can push and pull commensurate with his lifting ability without additional
17 limitation." (*Id.* (emphasis omitted).)

18 The ALJ found, at step four, that Plaintiff has the ability to perform his past
19 relevant work as a security guard and chief guard. (AR at 34.) Thus, the ALJ
20 concluded that Plaintiff was not suffering from a disability as defined by the Act.
21 (*Id.* at 35.)

---

[2] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 8-11, 23.) The ALJ's decision stands as the final decision of the Commissioner.

## III.
## APPLICABLE LEGAL STANDARDS

### A.   Five-Step Inquiry to Ascertain a Cognizable Disability

A claimant must satisfy three fundamental elements to be eligible for disability benefits: (1) a medically-determinable impairment; (2) the impairment prevents the claimant from engaging in substantial gainful activity; and (3) the impairment is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A well-established five-step sequential inquiry is utilized to assess whether a particular claimant satisfies these three elements. The inquiry proceeds as follows:

First, is the claimant engaging in substantial gainful activity? If so, the claimant cannot be considered disabled.

Second, does the claimant suffer from a "severe" impairment, *to wit*, one continuously lasting at least 12 months? If not, the claimant is not disabled.

Third, does the claimant's impairment or combination of impairments meet or equal an impairment specifically identified as a disability by the Commissioner under 20 C.F.R. part 404, subpart P, appendix 1? If so, the claimant is automatically determined to be disabled.

Fourth, is the claimant capable of performing his past work? If so, the claimant is not disabled.

Fifth, does the claimant have the so-called "residual functional capacity" to perform some other type of work? The critical question posed here is whether the claimant can, in light of the impairment and his or her age, education and work experience, adjust to another form of gainful employment?

1    If a claimant is found "disabled" or "not disabled" along any of these steps,
2 there is no need to complete the remaining inquiry. 20 C.F.R. §§ 404.1520(a)(4) &
3 416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

4    B.    <u>Standard of Review on Appeal</u>

5    This Court is empowered to review decisions by the Commissioner to deny
6 benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security
7 Administration must be upheld if they are free of legal error and supported by
8 substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as
9 amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings
10 are based on legal error or are not supported by substantial evidence in the record,
11 the court may reject the findings and set aside the decision to deny benefits.
12 *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,
13 242 F.3d 1144, 1147 (9th Cir. 2001).

14    "Substantial evidence is more than a mere scintilla, but less than a
15 preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant
16 evidence which a reasonable person might accept as adequate to support a
17 conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d
18 at 459. To determine whether substantial evidence supports the ALJ's finding, the
19 reviewing court must review the administrative record as a whole, "weighing both
20 the evidence that supports and the evidence that detracts from the ALJ's
21 conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed
22 simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d
23 at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the
24 evidence can reasonably support either affirming or reversing the ALJ's decision,
25 the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.*
26 (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUE PRESENTED

A single disputed issue is presented here: whether the ALJ erred in failing to find that Plaintiff's chronic prostatitis was a severe impairment. (Pl.'s Br. at 4-6.)

## V.
## DISCUSSION AND ANALYSIS

Plaintiff contends that the "ALJ erred in failing to find that [Plaintiff's] chronic prostatitis was a severe impairment." (Pl.'s Br. at 4.) In particular, Plaintiff argues that the "ALJ makes no meaningful analysis of whether [Plaintiff's] prostatitis is a severe impairment" and an "ALJ must adequately explain his evaluation of the combined effects of impairments." (*Id.* at 5.)

Defendant counters that the "ALJ noted the existence of Plaintiff's prostatitis, but properly determined it was non-severe as the record documented no resultant functional limitations from the impairment." (Def.'s Br. at 2.) Defendant claims that a "thorough review of the medical record demonstrates that no medical practitioner opined Plaintiff had any functional limitations arising from his testicular impairment." (*Id.*)

Defendant further maintains that "[e]ven if the Court were to determine that Plaintiff's prostatitis should have been found severe it is ultimately harmless to the overall disability analysis as the ALJ found severe impairments existed, proceeded with the disability analysis of all severe and non-severe impairments, and ultimately adopted the most restrictive medical opinion of record." (Def.'s Br. at 3.)

### A. Step-Two Inquiry Requires A "*De Minimus*" Threshold Showing

The threshold inquiry at step two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). The step two inquiry is defined as "'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001, *as amended* Aug. 9, 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

6

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90. "Important here, at the step two inquiry, is the requirement that the ALJ must consider *the combined effect* of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (emphasis added).

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."[4] *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28,[5] 1985 WL 56856, at *3).

In addition, "if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb*, 433 F.3d at 687 (quoting SSR 85-28, 1985 WL 56856, at

---

[4] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting[.]" *Edlund*, 253 F.3d at 1159 (internal citations omitted).

[5] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

*4) (brackets omitted).

### B. The ALJ's Step Two Determination

In his decision, the ALJ found at step two that Plaintiff's back disorder was a severe impairment. (AR at 31.) The ALJ did not find Plaintiff's prostatitis to be a severe impairment even though he noted that Plaintiff was "treated for chrnoic prostatitis" and "underwent a cystoscopy and bladder wash in September 2006." (*Id.* at 31-32.) The ALJ further noted that Plaintiff's "symptoms included chronic pelvic discomfort, post void fullness and straining to urinate." (*Id.* at 32.) However, the ALJ did not provide any further discussion as to why he did not include Plaintiff's prostatitis as a severe impairment. (*See generally id.* at 29-35.)

### C. The ALJ's Failure to Find Plaintiff's Prostatitis Severe at Step Two Was Harmless Error

Any error in the ALJ's failure to include prostatitis as one of Plaintiff's severe impairments at step two of the analysis was harmless, however. Three reasons guide this Court's determination.

First, step two was already resolved in Plaintiff's favor, *e.g.*, the ALJ found Plaintiff's back disorder to be severe and properly continued the sequential decision making process until reaching a decision at step five. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (concluding any error ALJ committed at step two was harmless because the step was resolved in claimant's favor); *Taylor v. Astrue*, 2010 WL 2773337, at *2-*3 (D. Or. 2010) (any error in failing to designate plaintiff's additional impairments as not severe did not prejudice him at step two, as step two was resolved in plaintiff's favor because ALJ found plaintiff had demonstrated several impairments necessary to satisfy step two).

Second, even assuming the ALJ erred in overlooking to list prostatitis at step two, any error was harmless because the ALJ, in fact, considered Plaintiff's prostatitis while assessing his limitations. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007, *as amended* Aug. 16, 2007) (concluding any failure to list bursitis as

8

severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four); *Baldwin v. Astrue*, 2010 WL 1946902, at *1-*3 (C. D. Cal. 2010) (finding ALJ's failure to find plaintiff's fibromyalgia severe at step two harmless because ALJ "expressly considered the symptoms Plaintiff attributed in whole or in part to her fibromyalgia"). The ALJ noted, as stated above, that Plaintiff was "treated for chronic prostatitis" and "underwent a cystoscopy and bladder wash in September 2006." (AR at 31-32.) The ALJ further noted that Plaintiff's "symptoms included chronic pelvic discomfort, post void fullness and straining to urinate." (*Id.* at 32.)

Further, although Plaintiff's treating physicians diagnosed Plaintiff with chronic prostatitis on numerous occasions, *none* of his treating physicians opined that Plaintiff's prostatitis imposed any additional functional limitations. (*See, e.g.,* AR at 210 (treatment note dated December 4, 2006 indicating Plaintiff suffered from a history of chronic prostatitis and pain in his groin and testes area, and previously underwent a bladder wash), 212 (treatment note dated October 13, 2006 indicating Plaintiff suffered from chronic prostatitis and complained of pain in his legs and thighs), 213 (pre-operative treatment note dated September 21, 2006 reporting Plaintiff has history of chronic prostatitis and suffers from "pelvic discomfort").)

Third, and notably, any error by the ALJ in failing to find Plaintiff's prostatitis severe at step two is impertinent to his nondisability finding. *See also Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991). There is substantial evidence in the record that even considering the combined effects of all of Plaintiff's impairments, both his back impairment and prostatitis and any resulting limitations, would not have resulted in a finding that Plaintiff is disabled. *See Hickman v. Commissioner*, 2010 WL 4007276, at *1 (9th Cir. 2010) (finding failure to include reading disorder as one of claimant's severe impairments at step two harmless because there was substantial evidence in the record that reading disorder would not have precluded claimant from work).

      The most restrictive RFC contained in the record is based on Plaintiff's testimony. (*See generally* AR at 1-343.) Plaintiff testified that he can sit, stand or walk in approximately "an hour and a half" increments. (*See id.* at 337.) The ALJ questioned the VE whether a hypothetical person with Plaintiff's "age, education and work background," a limitation to light work, "climbing ladders and scaffolding only occasionally" and sitting or standing "for one and a half-hour increments" can perform any "other work," apart from Plaintiff's past relevant work. (*Id.* at 341.) The ALJ also questioned the VE whether this same hypothetical person could perform any other work if he further "needs [the] ability to sit or stand as needed." (*Id.* at 342.) The VE responded to both questions in the affirmative. (*Id.* at 341-42.) In both scenarios, the VE stated that the hypothetical person could perform the work of a "bench assembler" or "cashier." (*See id.*) Accordingly, even given the most restrictive RFC contained in the record, the VE testified that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *See also Galicia v. Astrue*, 2010 WL 3710101, at *3 (C.D. Cal. 2009) (finding any error committed by ALJ at step two harmless because ALJ provided alternative finding that even if she determined at step two that plaintiff's psychiatric impairment was severe, she would have concluded at step five that plaintiff was not disabled).

      Thus, the Court concludes that any failure on the ALJ's part to find that Plaintiff's prostatitis was a severe impairment at step two was harmless error.

      Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: December 7, 2010

                                                  Hon. Jay C. Gandhi
                                                  United States Magistrate Judge